United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 29, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES OF APPEALS**
**FIFTH CIRCUIT**

**No. 02-41690**

**GILBERT ROY GOODWIN,**

**Petitioner-Appellant,**

**versus**

**DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,**
**CORRECTIONAL INSTITUTIONS DIVISION,**

**Respondent-Appellee.**

**Appeal from the United States District Court**
**for the Eastern District of Texas**
**(1:02-CV-578)**

Before BARKSDALE, GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Claiming his parole-denial violated the United States Constitution's Ex Post Facto Clause, Gilbert Goodwin, Texas prisoner # 749472, appeals, *pro se*, the denial of federal habeas relief. **AFFIRMED.**

I.

In 1993, Goodwin was convicted in Texas state court of felony aggravated sexual assault. He has been denied parole twice, in

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

1999 and 2001. On 25 June 2002, more than a year after the second parole-denial, Goodwin filed a state habeas application, claiming: the Texas Board of Pardons and Paroles denied him parole using a procedure enacted after the commission of his offense, thereby violating the Ex Post Facto Clause. U.S. CONST. art. I, § 9, cl. 3. Pursuant to a recommendation by the state habeas trial court (without findings and conclusions), the Texas Court of Criminal Appeals on 14 August 2002, without written order, denied his application.

Later that month, Goodwin sought federal habeas relief, pursuant to 28 U.S.C. § 2254. The State was not served. Instead, the district court denied relief, adopting the magistrate judge's report and recommendation which stated, *inter alia*, that the "parole review process is a procedural change that could not reasonably be considered substantial from the perspective of the defendant at the time the offense was committed" and, therefore, did not violate the Ex Post Facto clause.

In addition, the district court denied Goodwin a certificate of appealability (COA). Our court granted a COA and ordered additional briefing on: whether the change in the parole-voting requirement violated the Ex Post Facto clause; and, *sua sponte*, whether Goodwin's appeal would be moot if he were released from prison.

2

Goodwin's habeas petition having been denied by the district court without the State being served, the State's first appearance was in response to this appeal. The State claims, *inter alia*, a time-bar. Because the record was not sufficient to decide that claim, we retained jurisdiction and remanded to the district court for it to decide the time-bar claim under 28 U.S.C. § 2244(d)(1)(D) (one-year limitations period may begin to run on the date the factual predicate of the claim could have been discovered through the exercise of due diligence). *Goodwin v. Dretke*, No. 02-41690 (5th Cir. 29 June 2004) (*Goodwin I*). Instead, apparently applying § 2244(d)(1)(A) (one year period may begin to run the date the judgment becomes final), the district court ruled Goodwin's claim was time barred. Accordingly, concerning the second (2001) parole-denial, we again remanded for a determination of the time-bar claim under subpart (D). *Goodwin v. Dretke*, No. 02-41690 (5th Cir. 16 December 2004) (*Goodwin II*).

Following our second remand, an evidentiary hearing was held to determine when, pursuant to subpart (D), Goodwin could have discovered the factual predicate of his claim through the exercise of due diligence. Adopting the magistrate judge's report and recommendation, the district court made the following factual findings and ruled that, concerning the 2001 parole-denial, Goodwin's claim was *not* time barred: "1) [Goodwin] did not receive official notice that his parole application was denied; (2) [he]

3

discovered on July 1, 2001 that his parole application was denied after a visit with family members; (3) [Goodwin] could have discovered, by exercising due diligence, on July 1, 2001 that his second parole application had been denied; (4) [he] could not have discovered the factual basis of his claims until July 12, 2001, the earliest he could have received a copy of the minute sheet by exercising due diligence; (5) [he] placed his federal petition in the prison mail system on August 20, 2002; and (6) the petition is not barred by the statute of limitations."

## II.

At issue are: (1) whether Goodwin's federal habeas petition is time-barred; and (2) if not, whether the parole-voting-procedure change violated the Ex Post Facto clause. (Because Goodwin is not due for release until March 2006, he and the State did not brief the other issue for which we granted COA - whether his appeal would be moot if he were released. For the same reason, we need not address it.)

### A.

For the State's time-bar claim, the district court's findings of fact are reviewed for clear error; its conclusions of law, *de novo*. *E.g.*, **Foster v. Johnson**, 293 F.3d 766, 776 (5th Cir.), *cert. denied*, 537 U.S. 1054 (2002).

In May 1991, when Goodwin committed the sexual assault for which he was convicted, parole decisions were made by panels of

4

three Board members and required a majority vote. TEX. CRIM. PROC. art. 42.18 § 7(e) (Vernon 1991). A new procedure, enacted in 1995, required the votes of two-thirds of the entire Board (15 members) to grant parole. TEX. GOV'T CODE ANN. § 508.046 (Vernon 2001).

The new procedure was used for both of Goodwin's parole-denials (1999 and 2001). Goodwin does *not* contend he would have been granted parole in his first hearing under the former procedure. Rather, he contends: the voting records from his June 2001 parole-denial indicate all three members who would have been assigned to review him under the former procedure voted in favor of parole; therefore, he would have been granted parole under that procedure. According to Goodwin, using the new procedure for his 2001 parole proceeding violated the Ex Post Facto Clause because it increased his sentence. Therefore, he maintains his habeas claim did *not* arise until his second parole-denial (June 2001).

Because Goodwin filed his § 2254 habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), that Act controls. *E.g., Scott v. Johnson*, 227 F.3d 260, 262 (5th Cir. 2000), *cert. denied*, 532 U.S. 963 (2001). Under AEDPA, there is a one-year limitations period for state prisoners' federal petitions, which runs from the latest of four events. *See* 28 U.S.C. § 2244(d)(1)(A)-(D). Moreover, the period is tolled while a state habeas petition for the claim is pending. 28 U.S.C. § 2244(d)(2).

5

As noted, we held in **Goodwin I** that, for limitations purposes, subpart (D) governs the timeliness *vel non* of the filing of claims predicated on parole decisions. Accordingly, the one-year filing period began to run on the date Goodwin could have "discovered" the "factual predicate of [his] claim" for the parole-denial "through the exercise of due diligence". 28 U.S.C. § 2244(d)(1)(D). Following the **Goodwin II** remand and the evidentiary hearing held as a result, the district court found, *inter alia*: Goodwin discovered on 1 July 2001 that his parole application was denied; he placed his petition in the prison mail system on 20 August 2002; and it is not time-barred. Although the district court did not address tolling, it implicitly found the limitations period was tolled from 25 June 2002 to 14 August 2002, while Goodwin's state habeas petition was pending. *See* 28 U.S.C. § 2244(d)(2). Accordingly, if, under § 2244(d)(1)(D), the limitations period began to run on 1 July 2001, it was tolled from 25 June to 14 August 2002, leaving Goodwin seven days to file his federal petition; and that petition was timely if filed by 21 August 2002, seven days after the end of tolling. Again, Goodwin's petition was filed on 20 August.

Goodwin concedes that, *if* his claim arose upon his first parole-denial in 1999, his petition is time barred. He asserts, however: his claim did not arise until his second denial, when he would have been granted parole had the former procedure been used; and the factual predicate of his claim is, therefore, the 2001

6

denial.  He does not challenge his first parole determination.  He asserts that, because the two parole board decisions were different and occurred on different dates, each could be the basis of a separate claim.

Following the district court's ruling, we required supplemental briefing.  (Pursuant to Goodwin's motion, we **GRANT** him leave to file a supplemental reply brief and have considered it.)  In its supplemental brief, the State does *not* contend that, if Goodwin's claim arose from his second (2001) parole denial, his claim would be barred.  Rather, the State contends:  because the new parole voting requirement was first applied to Goodwin in his 1999 parole hearing, his claim arose then, and is time-barred.

It appears there is no case addressing this issue in the parole-hearing-habeas-claim context.  Based on the plain language of subpart (D), the one year period begins to run on "the date on which the factual predicate of the claim ... could have been discovered through the exercise of due diligence".  28 U.S.C. § 2244(d)(1)(D).  In determining that a defendant's claim should have been brought as a habeas, rather than as a 42 U.S.C. § 1983, claim, our court held:  "if a prisoner is challenging the result of a specific defective parole hearing ... and resolution would automatically entitle him to accelerated release, then the challenge must be pursued by writ of habeas corpus".  ***Allison v. Kyle***, 66 F.3d 71, 73  (5th Cir. 1995) (citation omitted).

As stated, Goodwin does not maintain that, for the 1999 parole hearing, he would have been entitled to release under the former procedure. Therefore, he could not maintain a habeas claim for it. The *factual predicate* for Goodwin's habeas claim did not arise until the 2001 parole determination. Again, the predicate is that, under the former procedure and based on the results of the parole board vote, Goodwin would have been released. And, the limitations period did not begin to run on that claim until he could have discovered, with due diligence, the predicate of *that* claim. As noted, the State does not contend, nor do we find, that the district court erred in finding that date was 1 July 2001.

Because Goodwin's habeas claim did not arise until his second parole hearing, he was not required to file a claim as to his first parole-denial to preserve his rights under the Ex Post Facto Clause for the second denial. Therefore, Goodwin's petition is not time-barred. (Accordingly, we need not reach Goodwin's alternative equitable-tolling claim.)

B.

For Goodwin's Ex Post Facto claim, the district court's findings of fact are reviewed for clear error; its conclusions of law, *de novo*. *E.g.*, **Foster**, 293 F.3d at 776. Relief cannot be granted under AEDPA unless the state court proceeding resulted in: (1) "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

8

the Supreme Court of the United States", 28 U.S.C. § 2254(d)(1); or (2) "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(2). "[T]he AEDPA inquiry is not altered when, as in this case, state habeas relief is denied without an opinion." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003) (citation omitted), *cert. denied*, 540 U.S. 1154 (2004). "For such a situation, our court: (1) assumes that the state court applied the proper clearly established Federal law; and (2) then determines whether its decision was contrary to or an objectively unreasonable application of that law." *Id.* (quotation omitted).

"Retroactive changes in laws governing parole of prisoners ... may be violative" of the Ex Post Facto Clause. *Garner v. Jones*, 529 U.S. 244, 250 (2000). In determining whether the change in Texas parole procedures violated the Ex Post Facto Clause, the "controlling inquiry" is "whether retroactive application of the change ... created 'a sufficient risk of increasing the measure of punishment attached to the covered crimes'". *Id.* (quoting *California Dept. of Corr. v. Morales*, 514 U.S. 499, 509 (1995)). As both sides agree, *Morales* requires application of a two-part test: (1) whether the change was retroactive; and (2) if so, whether it created a sufficient risk of increasing punishment. Both sides also agree that the change was retroactive. Therefore, we must determine whether, under *Garner*, the rule change violates

9

the Ex Post Facto Clause either facially or as applied. *Garner*, 529 U.S. at 255 ("When the rule does not by its own terms show a significant risk, the respondent must demonstrate ... that its retroactive application will result in a longer period of incarceration than under the earlier rule."); *see also Lynce v. Mathis*, 519 U.S. 433 (1997).

The State contends:  because the change does not alter the standards for parole eligibility or the proportion of total votes an inmate must receive to be paroled (two-thirds), it does not make Goodwin's punishment more severe or burdensome.  Thus, according to the State, the change does not create the requisite *sufficient risk* of increased punishment.

Goodwin presents only an as-applied claim.  To support his claim that he would have been paroled following the 2001 vote had the former procedure been used, he relies on the voting record from that hearing, attached as an exhibit to his state habeas petition. Relying on that exhibit, he claims three of the four Angleton Board members voted to grant him parole.  This is not evident from reading the exhibit.  At the evidentiary hearing following our second remand (for considering only the time-bar claim and for which Goodwin had counsel), testimony by Troy Fox, Section Director for Review and Release Processing of the Parole Division for the Texas Department of Criminal Justice, does support this contention. Fox testified that three of the four parole board members from the

Angleton Board Office, three of whom voted to parole Goodwin, would have voted on Goodwin's parole under the former procedure. (Fox also testified that the "yes" vote was conditional on Goodwin's successful completion of an 18-month rehabilitation program for sex offenders. According to Fox, had Goodwin successfully completed that program, he would have been released, but not before December 2002.)

Under AEDPA, however, we must assess the reasonableness of the state court decision in the light of the evidence that was before it. *See* 28 U.S.C. 2254(d)(2). Arguably, Goodwin does not satisfy the standard necessary for release. We need not decide that issue, however, because Fox's testimony was not presented in state court. (Furthermore, his testimony was not germane to the time-bar issue before the district court on remand.) The only evidence before the state court concerning the second parole denial was the voting sheet, attached by Goodwin as an exhibit to his habeas petition. There was *no* evidence that the three members who voted for parole would have been Goodwin's panel under the former procedure. Goodwin made only unsupported conclusory statements to that effect before the state court. Accordingly, it was not unreasonable for the state court to determine, based on the record before it, that, under established federal law, Goodwin was not entitled to habeas relief.

11

III.

For the foregoing reasons, the denial of habeas relief is

*AFFIRMED.*